Ww.hoIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Gregory A. Slachta, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 9:03-3130-23 |
| | ) | |
| Reliance Standard Life Insurance | ) | |
| Company, Tenet Employee Benefit | ) | **ORDER** |
| Plan, Group Long Term Disability | ) | |
| Insurance and Tenet Benefits | ) | |
| Administration Committee, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court upon the following motions: (1) Plaintiff Gregory A. Slachta, M.D.'s ("Plaintiff" or "Dr. Slachta") motion to reopen; (2) Plaintiff's post-remand motion for summary judgment; and (3) Defendants Reliance Standard Life Insurance Company, Tenet Employee Benefit Plan, Group Long Term Disability Insurance, and Tenet Benefits Administration Committee's (collectively referred to as "Defendants") cross-motion for summary judgment. For the reasons set forth herein, the court reopens the case, denies Plaintiff's motion for summary judgment, and denies Defendants' motion for summary judgment. The court again remands the matter to Defendant Reliance Standard, the plan fiduciary, for further consideration consistent with this Order.

**BACKGROUND**

Dr. Slachta began practicing urology and urologic surgery in 1975. In 1997, he began working as a urologic surgeon for Tenet Hearthcare Corporation ("Tenet"). During his employment, Plaintiff participated in the Tenet Employee Benefit Plan ("the Plan"), which provided welfare benefits, including disability benefits, to employees and former employees of Tenet and its

participating subsidiaries and affiliates. The Plan comprised a number of individual plans, including plan number 515, which is known as Group Long Term Disability Insurance. Defendant Group Long Term Disability Insurance is an employee welfare benefit plan within the meaning of ERISA. Tenet is the sponsor of the Plan, including plan number 515, and Defendant Tenet Benefits Administration Committee is the plan administrator. Defendant Reliance Standard Insurance Company ("Reliance Standard") insured certain benefits provided by the Plan, including certain benefits under plan number 515. Reliance Standard is the claims review fiduciary under Group Long Term Disability Insurance and is a fiduciary within the meaning of ERISA.

**I.    Medical History**

On April 20, 1999, Plaintiff sought treatment by a neurologist due to numbness in his distal upper extremities. Plaintiff had diminished fine motor movements in both hands, with the impairment greater on the right, his predominant hand. At the time, Plaintiff was suffering from carpal tunnel syndrome and cervical spondylosis. In June of 2000, Plaintiff was referred to Dr. Susan Calvert-Cramer, who began seeing Plaintiff after he underwent a right carpal tunnel release. By that time, Plaintiff had experienced pain in his neck for the better part of a year and tremors in both hands for more than one year. After undergoing an MRI and physical therapy, Dr. Calvert-Cramer saw Plaintiff again on October 17, 2000. Dr. Calvert-Cramer stated that Plaintiff was "having a lot of neck pain and involuntary muscle twitches in his right biceps and right volar forearm area," which were "definitely aggravated with work given the positions he needs to put his neck in." (Admin. Record at 106.) Dr. Calvert-Cramer advised Plaintiff to stop working "because of loss of finger and hand dexterity due to his carpal tunnel syndrome and loss of strength and sensation due to cervical spinal stenosis." (Admin. Record at 116.)

On October 25, 2000, Plaintiff applied for long term disability benefits under the Plan. Almost a month later, Dr. Calvert-Cramer saw Plaintiff and stated that Plaintiff was still suffering from neck pain, spasms in his right arm, weakness in his left hand, and restricted cervical range of motion. By January of 2001, Plaintiff's condition had not improved. At this point, he was experiencing muscle twitching and myoclonic jerking in the right arm and to a lesser extent in the left arm. (Admin. Record at 397.) Plaintiff's condition deteriorated until he ceased working completely by May 1, 2002.

The 90-day "Elimination Period" in Plaintiff's policy ran from October 25, 2000, until January 23, 2001. After the Elimination Period, Reliance Standard reviewed Plaintiff's records and concluded that Plaintiff was not totally disabled, thereby denying him benefits on March 30, 2001. Reliance Standard based its conclusion on medical records provided by Plaintiff's treating physicians.

Plaintiff appealed Reliance Standard's initial denial, and during Plaintiff's appeal, Reliance Standard referred Plaintiff's file to a vocational rehabilitation coordinator. The vocational review identified four material duties of a urologist:

1. Examines patient, using x-ray machine, fluoroscope, and other equipment to aid in determining nature and extent of disorder or injury.
2. Treats patient, using diathermy machine, catheter, cystoscope, radium emanation tube and similar equipment.
3. Performs surgery, as indicated.
4. Prescribes and administers urinary antiseptics to combat infection.

(Admin. Record at 215).[1] Based on the results of the vocational review, which found that Plaintiff could perform at least two of the material duties of his occupation, and based on medical records

---

[1] This list matches the list of material duties provided in the Department of Labor's Dictionary of Occupational Titles ("DOT").

3

provided by Plaintiff's doctors, Reliance Standard denied Plaintiff's appeal on March 15, 2002. Plaintiff again appealed, but in August of 2002, Reliance Standard denied the appeal.

## II.     Plaintiff's Lawsuit

Plaintiff filed his complaint in this court on October 2, 2003. On September 22, 2004, Defendants moved for summary judgment, asserting that Plaintiff was not entitled to long term disability benefits. Two days later, Plaintiff moved for summary judgment, claiming that Defendant Reliance Standard wrongfully denied him disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). Next, on October 26, 2004, Plaintiff moved to strike affidavits, or in the alternative, to allow discovery and amendment of his complaint. In an Order dated January 24, 2005, this court denied both parties' motions for summary judgment and remanded the case to Reliance Standard "to conduct a new, more comprehensive review of plaintiff's claim and to issue a new benefits determination." (Order at 16.) Also, the court denied Plaintiff's motion to strike affidavits, or in the alternative, to allow discovery and amendment of the complaint.[2]

---

[2] Additionally, in the January 24, 2005 Order, the court held that the more restrictive "each and every" definition of "Total Disability" applied. (*See* Jan. 24, 2005 Order.) The applicable definition provides the following:

Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
> (1) during the Elimination Period (the first ninety days following the onset of total disability), an Insured cannot perform *each and every material duty of his/her regular occupation*; and
> (2) for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
>> (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period.

4

After remand, Reliance Standard found that its original decision denying benefits to Plaintiff was appropriate, in a decision issued August 25, 2005. Specifically, Reliance Standard determined that "Dr. Slachta was not Totally Disabled from each and every material duty of his occupation throughout the Elimination Period as required by the terms of the policy." (Pl.'s Mot. for Summary Judgment, Exhibit 1, at 1.)

Thereafter, on December 16, 2005, Plaintiff filed a motion to reopen the case and a motion for summary judgment, arguing that Reliance Standard failed to fairly determine Plaintiff's eligibility for benefits and that the undisputed material facts establish that Plaintiff is disabled and entitled to benefits. Plaintiff also argues that Reliance Standard did not comply with this court's directive to consider the evidence and analysis cited in the court's January 24, 2005 Order.

On January 23, 2006, Defendants filed a response in opposition to Plaintiff's motion for summary judgment and a cross-motion for summary judgment.[3] Specifically, Defendants state that Plaintiff falsely accuses Reliance Standard of failing to follow this court's directive. Defendants point out that on remand, Reliance Standard obtained Plaintiff's billing records and matched the activities with the duties identified in the DOT. Defendants claim that a review of Plaintiff's billing records "cannot support a claim of total disability under this policy" because the billing records demonstrate that Plaintiff performed a number of the material duties of his occupation during and after the elimination period. (Defs.' Mot. at 2-3.) For instance, Defendants note that during the period between November 1, 2000, and February 13, 2001, Dr. Slachta billed for examining 103 patients, including, *inter alia*, the use of x-ray/fluoroscopy equipment at least 7 times, the use of a

---

(Admin. Record at 798.) (alteration and emphasis added).

[3] Defendants do not oppose Plaintiff's request to reopen the case. (Def. Mot. at 1.)

5

catheter on 10 occasions, and 7 cystourethroscopies. (Defs.' Mot. at 4.) Defendants also note that during the subsequent period between February 13, 2001, and April 1, 2001, Plaintiff billed for seeing 109 patients, including, *inter alia*, 23 cystourethroscopies, 7 biopsies, and a vasectomy. Accordingly, Defendants assert that because Plaintiff "was performing most, if not all, of the material duties of his regular occupation during the Elimination Period, Reliance Standard did not abuse its discretion when it denied the claim," and therefore it is entitled to judgment as a matter of law. (Defs.' Mot. at 9.)

In response, Plaintiff asserts that Defendants failed to address the deficiencies in Reliance Standard's post-remand review of Plaintiff's claim. Moreover, Plaintiff asserts that the undisputed evidence demonstrates that Dr. Slachta was not performing any of the material tasks of a urologist, as those tasks are defined in the DOT, during the Elimination Period. Most importantly, Plaintiff states that the billing records do not support Reliance Standard's denial of benefits because the records extend 15 working days beyond the end of the Elimination Period and do not contain exact dates of treatment.

## **STANDARD OF REVIEW**

### I.     **Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition

by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.' " *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327

## II.     Standard Reliance's Denial of Benefits

"A denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1988). If there is sufficient discretionary authority, then the abuse of discretion standard applies and the denial will not be reversed "if reasonable, even if the court itself would have reached a different conclusion." *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan,* 201 F.3d 335, 340 (4th Cir. 2000). This means that so long as the denial of benefits is the result of "a deliberate, principled reasoning process and . . . is supported by substantial evidence," it will not be disturbed. *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir. 1997).

Even under this deferential standard of review, however, evidence that the administrator or fiduciary who denied benefits was operating under a conflict of interest is relevant and "must be

weighed as a facto[r] in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115. Thus, the Fourth Circuit has explained: "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan term, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997). The Fourth Circuit has employed a "sliding scale" approach to denials of benefits when the plan insurer and administrator are the same. *Id.* Under this approach, the court must review the denial of benefits with "some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe v. Group Hospitalization & Medical Serv.*, 3 F.3d 80, 87 (4th Cir. 1993).

Here, the policy clearly grants discretionary authority to Reliance Standard, the claims review fiduciary. Moreover, a conflict of interest exists because Reliance Standard both insures the plan and decides eligibility for benefits. Accordingly, the court finds that a modified abuse of discretion standard of review is appropriate. Therefore, the court reviews the merits of the denial of benefits to determine whether it was consistent with an exercise of discretion by a fiduciary acting free of conflicts. *Doe*, 3 F.3d at 87. The issue essentially "comes down to whether plaintiff received a full and fair review." *Willis v. Baxter Int'l, Inc.*, 175 F.Supp.2d 819, 831 (W.D.N.C. 2001).

## DISCUSSION

As previously mentioned, this court remanded this case to Reliance Standard in an Order filed January 24, 2005, wherein the court instructed Reliance Standard "to conduct a new, more comprehensive review of plaintiff's claim and to issue a new benefits determination, considering the evidence and analysis mentioned in [the Order]." (Jan. 24, 2005 Order.) In the Order, the court

found it reasonable for Defendants to use the DOT to determine Plaintiff's material duties. (Jan. 24, 2005 Order at 14.) However, the court did not find "that Defendants relied on substantial evidence that stated Plaintiff could perform any of the specific DOT material duties." (Jan. 24, 2005 Order at 14.) For instance, Defendants relied heavily on a medical report, in which Dr. Calvert-Cramer stated that she "could not justify that [Dr. Slachta] was unable to perform 'each and every material duty of his occupation.' " (Jan. 24, 2005 Order at 14.) However, as the court pointed out, Dr. Calvert-Cramer did not base her comments or conclusions on the material duties listed in the DOT and relied upon by Defendants. Additionally, the court stated that "Dr. Calvert-Cramer's reference to Plaintiff's ability to do 'office consultations and visits' does not fit exactly under any of the DOT's specific task descriptions."[4] (Jan. 24, 2005 Order at 14.)

On remand, Reliance Standard conducted additional investigation into Dr. Slachta's activities during the Elimination Period. Namely, Reliance Standard obtained Dr. Slachta's billing records and matched his work activities with the duties identified in the DOT. Additionally, Defendants requested a Labor Market Survey. Ultimately, Defendants determined that because Dr. Slachta performed some of the material duties of his occupation during the Elimination Period, he was not

---

[4] In his memorandum in support of his motion for summary judgment, Plaintiff asserts that this court found that "office visits" are not one of the specific tasks listed in the DOT. In fact, what the court stated was that "Dr. Calvert-Cramer's reference to Plaintiff's ability to do 'office consultations and visits' does not fit exactly under any of the DOT's specific task descriptions." (Jan. 24, 2005 Order at 14.) In other words, Dr. Calvert-Cramer's statement that Plaintiff was not limited from conducting office visits and consultations, standing alone, does not provide substantial evidence that Plaintiff can perform his material duties as set forth in the DOT. However, this is not to say that all office visits are not among the material duties of a urologist. For instance, if an office visit included an examination using an "x-ray machine, fluoroscope, and other equipment to aid in determining nature and extent of disorder or injury," such office visit certainly would qualify as one of the specific tasks listed in the DOT. Thus, this court has not found that office visits are not among the material duties of a urologist. Rather, it depends on the purpose and nature of each visit as to whether it qualifies as the performance of a urologist's material duties, as set forth in the DOT.

9

incapable of performing each and every material duty of his occupation, as required by the policy. Accordingly, on August 25, 2005, Reliance Standard issued its decision, again determining that its original decision to deny benefits was appropriate.

In response to Reliance Standard's decision on remand, Plaintiff filed a motion to reopen the case and a motion for summary judgment, asserting that Reliance Standard "ignored the Court's Order" and did not fairly and impartially consider the medical evidence. (Pl.'s Mot. for Summary Judgment at 3.) Specifically, Plaintiff asserts that Defendants failed to comply with the court's Order, in that the new decision ignores evidence that the court directed Defendants to consider. The court does not agree with Plaintiff's contention and finds that although Reliance Standard did not refer to Dr. Calvert-Cramer's opinions, Reliance Standard did comply with this court's Order by considering particularly Dr. Slachta's ability to perform the specific material duties listed in the DOT. Nevertheless, because the evidence relied upon by Defendants – namely, Plaintiff's undated billing records – covers a period extending fifteen working days past the Elimination Period, the court is unable to conclude that substantial evidence supports Reliance Standard's new decision.

**I.      Reliance Standard's Evaluation of Dr. Slachta's Billing Records**

Defendants reviewed Dr. Slachta's billing records and compared the billed activities with the four material duties listed in the DOT, resulting in the following findings:

1.) Examines patient, using x-ray machine, flouroscope, and other equipment to aid in determining nature and extent of disorder or injury.
   a. Dr. Slachta completed 103 office visits, examining patients from 11/1/00-2/13/01 and 109 from 2/13/01-4/1/01.
   b. Dr. Slachta utilized x-ray/flouroscopy equipment 7 times from 11/100-2/13/01 and 19 from 2/13/01-4/1/01.
2.) Treats patient, using diathermy machine, catheter, cystoscope, radium emanation tube and similar equipment.
   a. Dr. Slachta utilized catheters on 10 occasions from 11/1/00-2/13/01 and 3 from 2/13/01-4/1/01.

        b.       Dr. Slachta utilized cystourethroscopy on 7 occasions from 11/1/00-2/13/01 and 23 from 2/13/01/-4/1/01.
        c.       Dr. Slachta performed treatment utitlizing other equipment on 4 occasions from 11/1/00-2/13/01 and 7 from 2/13/01-4/1/01.
3.)    Performs surgery, as indicated.
        a.       Dr. Slachta performed prostate biopsies, a surgical procedure, on 1 occasion from 11/1/00-2/13/01 and 7 from 2/13/01-4/1/01.
        b.       Dr. Slachta performed vasectomy on 1 occasion from 2/13/01-4/1/01.
4.)    Prescribes and administers urinary antiseptics to combat infection.
        a.       There is no way to measure prescriptions from CPT codes however, there were 93 urinalysis done from 11/1/00-2/13/01 and 103 from 2/13/01-4/1/01  It would be expected that at least 50% of these would result in antibiotic prescriptions.

(Standard Reliance's Aug. 25, 2005 Decision.)

In providing his billing records to Defendants, Plaintiff presented them in three batches, corresponding to the following time periods: (1) November 1, 2000, through February 13, 2001; (2) February 13, 2001, through April 1, 2001; and (3) November 13, 2000, through April 1, 2001. Interestingly, as Defendants point out, "[w]ithin these batches there is no means to identify the specific date on which a procedure was billed."[5]  (Reliance Standard's Aug. 25, 2005 Decision.) Ultimately, because the Elimination Period ran from October 25, 2000, to January 23, 2001, the first batch of records (covering November 1, 2000, through February 13, 2001) undoubtedly covered a period starting almost a week into the Elimination Period and extending fifteen working days past the end of the Elimination Period.  It is for this reason that Plaintiff argues that the billing records do not provide substantial evidence that Plaintiff was performing the material duties of a urologist during the Elimination Period.  Plaintiffs state:

> [A]ll of the billing records relied upon by Defendants include services billed <u>after</u> the Elimination Period expired.  Defendants ask this Court to assume that Dr. Slachta

---

[5] Frankly, the court is puzzled at why Plaintiff's billing records do not contain particular dates on which Dr. Slachta performed any of the procedures.

11

>performed the material duties of a urologist during the Elimination Period. The court should decline this invitation for two reasons. First, assumptions are not evidence. Second, Reliance Standard's undisputed conflict of interest requires that the deference otherwise due to its decision must be lessened to the extent necessary to neutralize any impact of that conflict of interest.

(Pl.'s Reply at 3.) (emphasis in original). As Plaintiff points out, "the issue is whether Plaintiff was able to perform the material duties of his regular occupation during the Elimination Period, not 'around' that time." (Pl.'s Reply at 4.) (emphasis in original). With respect to Defendants' assertion that Plaintiff examined patients using equipment during the Elimination Period, Plaintiff states:

>Defendants concede that only seven of those "office visits" involved examinations of patients with the use of equipment. The record contains no evidence that those seven examinations occurred during the Elimination Period. The billing records include services rendered during the three weeks following the end of the Elimination Period. Those seven examinations could easily have been performed after the end of the Elimination Period, as they would have averaged less than 0.5 per day over 15 days. No basis exists for the Court to assume those seven examinations occurred during the Elimination Period.

(Pl.'s Reply at 4-5.) (emphasis in original). Likewise, with respect to Defendants' assertion that Plaintiff treated patients with the use of equipment "contemporaneous with the Elimination Period" 21 times, Plaintiff asserts that Defendants have presented no evidence that any of these services occurred during the Elimination Period, rather than within the three weeks after the Elimination Period. (Pl. Reply at 5.)

In contrast, Defendants claim that Plaintiff's criticism of their use of the billing records is absurd because "[i]t was reasonable for Reliance Standard to conclude that at least some of these services were provided during the Elimination Period." (Def.'s Response in Opp. at 5.) Moreover, Defendants assert that Dr. Slachta could have stated in his Affidavit that he performed all of the billed procedures after the Elimination Period. (Def.'s Response in Opp. at 5.) Finally, Defendants state that "[e]ven if Dr. Slachta performed all of these activities during the two weeks after the

12

Elimination Period ended, this provides substantial evidence that he was also capable of performing those duties *during* the Elimination Period."  (Def.'s Response in Opp. at 6.)

Ultimately, although the court believes it likely that Dr. Slachta cannot meet the "each and every" definition of total disability, the court is unwilling to *assume* that Dr. Slachta performed any of the material duties of his occupation based on billing records that cover a period extending 15 working days past the end of the Elimination Period.  Without dated billing records, Defendants' decision relies upon mere assumptions, and regardless of how natural or logical such assumptions may in fact be, the court is unwilling to hold that such assumptions constitute substantial evidence, particularly in light of the court's obligation to review Reliance Standard's decision under the modified abuse of discretion standard.  In other words, to find that Defendants' post-remand decision is supported by substantial evidence would require the court to assume evidence which is not in the record, something which this court is not willing to do.  Accordingly, the court again remands the matter to Defendant Reliance Standard for further consideration of whether Dr. Slachta in fact performed the material duties of his occupation *during* the Elimination Period, which ran from October 25, 2000, to January 23, 2001.

## **CONCLUSION**

It is therefore, **ORDERED,** for the foregoing reasons, that Plaintiff's motion to reopen is **GRANTED**. Plaintiff's motion for summary judgment is **DENIED**, and Defendant's motion for summary judgment is **DENIED**. The court again **REMANDS** the case to Defendant Reliance Standard, the plan fiduciary, for further consideration consistent with this Order.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**May 17, 2006**